**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**IDA CUMMINGS, *et al.***

**Plaintiffs,**

**v.**

**THE DISTRICT OF COLUMBIA, *et al.***

**Defendants.**

**Civil Action No. 04-1427 (RMC)**

**MEMORANDUM OPINION**

Ida Cummings is the grandmother of M.H., a twenty-year-old resident of the District of Columbia who is learning-disabled and emotionally disturbed. Compl. at 2. M.H. is eligible to receive special education services, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1412. *Id.* Ms. Cummings filed the instant complaint on August 19, 2004, on behalf of M.H., complaining that the District of Columbia Public School System ("DCPS") has failed to provide a "free appropriate public education," *see* 20 U.S.C. § 1412(a)(1)(A), to M.H. The District of Columbia now moves to dismiss or, in the alternative, for summary judgment, which Ms. Cummings opposes.

## I. BACKGROUND

### A. IDEA

Under IDEA, disabled students are entitled to a free appropriate public education ("FAPE"). *See id.* A team consisting of the parents and teachers of the disabled student, and other educational specialists as needed, meets and confers to develop an individualized education program ("IEP") for each student. The IEP is a written statement that includes goals and instructional

objectives for the student's education, services to be provided, projections regarding the dates on which such services are offered, and criteria for evaluating whether instructional objectives are met. *See* 20 U.S.C. § 1414(d)(1)(A)(I); *see also* 20 U.S.C. § 1401(14). "In other words, the IEP is the legal instrument that lays out what services the public education agency must deliver to the student in order to provide that student with a FAPE." Defendants' Memorandum in Support of Defendants' Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment ("Defs.' Mem.") at 1. The IEP team also decides where to place the student. *See* 20 U.S.C. §§ 1412(a)(5)(A) and 1414(d) and (f). Additionally, the IEP team may determine that the student requires non-educational, supportive services to benefit from special education. *See* 34 C.F.R. § 300.24(a). These are known as "related services."[1]

**B. Factual Background**

In March 2003, M.H. was attending school at the Leary School, a private school in Maryland with special education services paid for by the District of Columbia pursuant to IDEA.

---

[1] The IDEA states:

> The term "related services" means transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services . . . counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(26)(A); *see Cedar Rapids Community School District v. Garret F.*, 526 U.S. 66, 77 (1999) (noting that related services are "[a]s a general matter, services that enable a disabled child to remain in school during the day to provide the student with 'the meaningful access to education that Congress envisioned.'" (citation omitted)).

*See* Defs.' Ex. 1, March 19, 2003 IEP.[2] An IEP team meeting was held on March 19, 2003, at the Leary School to consider M.H.'s education. *Id.* The IEP team determined that M.H. was in need of several evaluations and developed a revised IEP. *Id.* at 3. M.H. refused to sign the IEP because she wanted to attend a school close to her son's daycare facility. *See id.* at 1. The team agreed to reconvene. *See id.* at 3.

On May 29, 2003, a multi-disciplinary team ("MDT") meeting was held at the Leary School to discuss M.H.'s IEP and to address her non-attendance since March 19. *See* Defs.' Ex. 2, MDT Meeting Notes. While M.H. was still registered at the Leary School, she had poor attendance due to daycare problems with her son. *See id.* DCPS proposed that M.H. be placed at M.M. Washington Center, a full-time special education program within the DCPS system to enable her to be closer to her son's daycare facility. *See id.*

Through her attorney, on May 30, 2003, M.H. filed a request for a due-process hearing with the DCPS Student Hearing Office, alleging that DCPS had failed to complete testing, had failed to develop an appropriate IEP, and had failed to provide an appropriate placement. *See* Defs.' Ex. 3, May 30, 2003 Hearing Request. The requested hearing was held on July 1, 2003, and a Hearing Officer's Decision ("HOD") was issued on July 29, 2003. *See* Defs.' Ex. 4, July 29, 2003 HOD. The hearing officer ordered DCPS to conduct various assessments, to convene a multi-disciplinary team meeting once the evaluations were completed, and to place M.H. in an appropriate facility. *See id.* In addition, the hearing officer found that M.H. had missed at least 166 days of school during the 2002-2003 school year because of her inability to secure convenient daycare

---

[2] The facts are taken from the complaint and the exhibits proffered by Defendants, which Plaintiffs do not contest.

services for her son. *See id.* at 4. He also found that she had refused to sign her IEP because she wanted to be placed in a school that would facilitate daycare services for her son. M.H. contended that DCPS was obligated to provide such services, as "related services." *See id.* The hearing officer found that daycare services for M.H.'s child were not "related services" to M.H.'s education under IDEA and were not the responsibility of DCPS. Specifically, he stated:

> As a general matter, services that enable a disabled child to remain in school during the day provide the student with "meaningful access to education that Congress envisioned." Daycare services for a student's child do not fit the requirement of assisting the child to benefit from special education or to enable the child to remain in school during the day. . . . Daycare services for Petitioner's child do not enhance Petitioner's skills or her physical or emotional condition.

Defs.' Ex. 4 at 5.

M.H.'s attorney filed another request on March 10, 2004 for a hearing, alleging that DCPS had failed to complete the requested evaluations, had failed to develop an IEP based on those evaluations, and had failed to make an appropriate placement. *See* Defs.' Ex. 5, April 14, 2004, Settlement on the Record, at 1-2. A hearing was convened on April 5, 2004, and the parties reached a settlement that was entered into the record by the hearing officer on April 14, 2004. *Id.*

DCPS then completed the necessary evaluations and convened an IEP meeting on April 28, 2004. *See* Defs.' Ex. 6, April 28, 2004, IEP. At that meeting, the IEP team decided that M.M. Washington Center continued to be an appropriate placement for M.H. *See id.* M.H. and her attorney did not sign the IEP and M.H. refused to attend M.M. Washington Center. *See id.*

On August 19, 2004, M.H.'s attorney filed another request for a due-process hearing at the DCPS Student Hearing Office. *See* Defs.' Ex. 7, Aug. 19, 2004 Hearing Request. On that same date, she filed a complaint and motion for a preliminary injunction with this Court. A hearing

convened on September 21, 2004 and the hearing officer issued his decision on September 28, 2004. *See* Defs.' Ex. 8, Sept. 28, 2004 HOD. The hearing officer found that DCPS had provided M.H. with an educational program but that she did not avail herself of that program. *See id.* He specifically found that M.M. Washington Center was an appropriate placement for M.H. *Id.* He concluded that "if a student does not attend and does not register, DCPS cannot be expected to implement the student's IEP." *Id.* M.H. did not appeal that decision.

## II. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c). Summary judgment is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Only factual disputes that are capable of affecting the substantive outcome of the case under the governing law are deemed "material" and "genuine." *See Anderson*, 477 U.S. at 248; *Laningham v. United States Navy*, 813 F.2d 1236, 1242-42 (D.C. Cir. 1987).

## III. ANALYSIS

The Court must dismiss the complaint because Plaintiffs did not exhaust their administrative remedies before filing suit and because their claims are moot after the September 28,

2004, Hearing Officer's Decision, which they did not appeal.

**A. Exhaustion of Remedies**

For almost as long as we have had administrative agencies, it has been a tenet of law that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938). The IDEA statute provides for an administrative "due-process" hearing to resolve complaints about the education provided (or not provided) to a disabled student. *See* 20 U.S.C. § 1415(f)(1)(A); 34 C.F.R. §§ 300.507-512. DCPS has adopted specific regulations to carry out its obligations to safeguard student rights. 5 D.C.M.R. §§ 3029-3031. An HOD is a final agency decision that may be appealed to any court of competent jurisdiction. *See* 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.512. These administrative processes are those that must be exhausted before a claimant can file a lawsuit under IDEA. *Moss v. Smith*, 794 F. Supp. 11, 13 (D.D.C. 1992); *see also Cox v. Jenkins*, 878 F.2d 414, 418 (D.C. Cir. 1989) (noting that pursuant to the predecessor statute to the IDEA, "judicial review is normally not available . . . until all administrative proceedings are completed"); *Smith v. Robinson*, 468 U.S. 992, 1011 (1984), *superceded by statute on other grounds* (same).

Since Ms. Cummings filed this lawsuit before she completed the DCPS hearing process and obtained the September 2004 HOD, Plaintiffs failed to exhaust their administrative remedies and the Court is without jurisdiction to rule on the complaint. *See Moss*, 794 F. Supp. at 13. Plaintiffs seek to avoid this conclusion by arguing that they have, indeed, exhausted their administrative remedies:

> For two years, plaintiffs attempted to work with Defendants. . . . Plaintiffs

> requested evaluations . . ., Plaintiffs requested that an appropriate plan be developed, and Plaintiffs requested due process hearings. Plaintiffs participated in meetings and administrative hearings. Plaintiffs took expected reasonable measure[s] to secure administrative relief. However, Defendants failed to do what is in the best interest of the Plaintiff, M.H.

Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Pls.' Opp.") at 6. The Court agrees that the record shows that Plaintiffs participated in the IEP process and that DCPS was very late at completing the evaluation testing that the IEP team directed for M.H. But the real disagreement here is not over a failure of DCPS to conduct studies or develop an IEP. Rather, Plaintiffs candidly disagree with the recommendations of the IEP team:

> Defendants placed Plaintiff [M.H.] at M.M. Washington Center ("MM"), a school for children with emotional disturbance. The placement is inappropriate for Plaintiff MH. Plaintiff, [sic] MH has multi-disability, learning disability [as her] primary disability and emotional disabilities [as her] secondary disability. Plaintiff, [sic] MH has been accepted to attend CityLights School. . . . CityLights School is in a different category as other private school[s] because of the multi-agency support of the school. Plaintiff was accepted to the school pending DCPS issuance of prior notice. Defendants failed to issue prior notice to CityLights School. The granting of Plaintiffs' request for declaratory judgment would settle this case and enable Defendants the opportunity to provide appropriate services to Plaintiff, M.H.

Pls.' Opp. at 4-5. This very argument was the subject of the September 28, 2004 HOD. Plaintiffs cannot show that the administrative process was futile or inadequate because they did not appeal the final administrative decision on the point that they wish to argue to the Court. While Plaintiffs assert that DCPS failed to comply with the HODs issued on July 28, 2003 and April 13, 2004 (which was a Settlement on the Record), Pls.' Opp. at 10, this argument is factually inaccurate. DCPS brought itself into compliance with those HODs, as evidenced by the April 28, 2004, IEP, *see* Defs.' Ex. 6, which Plaintiffs fail to mention. The basic problem is that Plaintiffs do not agree with the IEP or the

continued placement of M.H. at the M.M. Washington Center. This disagreement does not mean, however, that DCPS has not met its obligations, as found by the hearing officer in the September 28, 2004 HOD.

**B. Mootness of the Claim**

After Plaintiffs filed their complaint in this matter on August 19, 2004, the Student Hearing Office convened a hearing on Plaintiffs' opposition to the April 28, 2004 IEP. The hearing was held on September 21, 2004 and the hearing officer issued his decision on September 28, 2004. *See* Defs.' Ex. 8, Sept. 28, 2004 HOD. The hearing officer found that DCPS had provided M.H. with an educational program but that she did not avail herself of that program. *See id.* He specifically found that M.M. Washington Center was an appropriate placement for M.H. *Id.* Plaintiffs contend that the administrative hearing did not address the issues raised in the instant case. *See* Pls.' Opp. at 8-9. However, this argument overlooks the specific conclusion of the hearing officer on the appropriateness of M.M. Washington Center for M.H. This same issue is the crux of Plaintiffs' complaint here.

Plaintiffs did not appeal the September 28, 2004, HOD. That administrative decision is now final and resolves the issues presented in Plaintiffs' complaint in this action. Accordingly, Plaintiff's complaint is moot.

## IV. CONCLUSION

For the reasons stated, the Court finds that Plaintiffs failed to exhaust their administrative remedies and that their claims are moot. Defendants' motion for summary judgment will be granted and this case will be dismissed. A memorializing order accompanies this memorandum opinion.

_______________/s/______________________________
ROSEMARY M. COLLYER
United States District Judge

DATE: September 7, 2005.